UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| QUANTUM ENTERTAINMENT, LTD., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 11-47 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 13, 14 |
| | : | | |
| UNITED STATES DEPARTMENT OF INTERIOR, BUREAU OF INDIAN AFFAIRS, | : | | |
| | : | | |
| Defendant. | : | | |

MEMORANDUM OPINION

GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING THE
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

I. INTRODUCTION

This case comes before the court on the parties' cross-motions for summary judgment. The plaintiff, Quantum Entertainment Limited ("QEL"), commenced this action against the Bureau of Indian Affairs ("BIA"), a department within the United States Department of the Interior ("DOI"). According to the plaintiff, the DOI's Interior Board of Indian Appeals ("the Board") issued an administrative decision that violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.* Upon review of that decision, this court previously held that the Board had failed to articulate a reasoned basis for certain findings central to its holding and remanded the case to the Board for further explanation. The Board thereafter issued a revised opinion in 2010, and the parties have now filed cross-motions for summary judgment. Because the Board's 2010 opinion was not arbitrary, capricious or contrary to law, the court grants the defendant's motion for summary judgment and denies the plaintiff's motion.

## II.  BACKGROUND

### A.  Statutory Framework

In 1872, Congress passed legislation that governed agreements related to Native American lands, codified at 25 U.S.C. § 81.  From 1871 until 2000, this legislation, referred to herein as "Old Section 81," remained substantially unchanged and read as follows:

> No agreement shall be made by any person with any tribe of [Native Americans] . . . for the payment or delivery of any money or other thing of value . . . in consideration of services for said [Native Americans] relative to their lands . . . unless such contract or agreement be executed and approved [by the Secretary of the DOI ("Secretary")] . . . .  All contracts or agreements made in violation of this section shall be null and void, and all money or other thing of value paid to any person by any [Native American], tribe, or any one else, for or on his or their behalf, on account of such services, in excess of the amount approved by the . . . Secretary for such services, may be recovered by suit in the name of the United States.

25 U.S.C. § 81 (1994).  Congress passed Old Section 81 out of concern that "claims agents and attorneys working on contingency fees routinely swindl[ed Native Americans] out of their land, accepting it as payment for prosecuting dubious claims against the federal government."  *United States v. Turn Key Gaming, Inc.*, 260 F.3d 971, 976-77 (8th Cir. 2001) (citing *Cong. Globe*, 41st Cong., 3d Sess. 1483, 1483-87 (daily ed. Feb. 22, 1871)); *see also id.* at 976 n.6, 977 n.7.

In 2000, Congress amended Old Section 81 as part of the Native American Tribal Economic Development and Contracts Encouragement Act of 2000.  25 U.S.C. §§ 71, 81, 476.  This "amendment" was intended to replace Old Section 81, as the changes to the text were quite substantial.  S. REP. NO. 106-150, at 1, 1999 WL 965424 (1999).  The relevant text of 25 U.S.C. § 81, as amended ("New Section 81"), states that "[n]o agreement or contract with [a Native American] tribe that encumbers [Native American]

lands for a period of 7 or more years shall be valid unless that agreement or contract bears the approval of the Secretary of the Interior or a designee of the Secretary ['DOI approval']." 25 U.S.C. § 81(b) (2000). In other words, whereas Old Section 81 required DOI approval of any agreement between Native Americans and others regarding Native American land, New Section 81 only requires DOI approval if an agreement with a Native American tribe would hinder the use of its land for a period of 7 years or more. *See id.*

The legislative history surrounding the enactment of New Section 81 illustrates that Congress was concerned that "many provisions of [Old Section 81 had] come to be antiquated and unnecessary," H.R. REP. NO. 106-501, at 2 (2000), *as reprinted in* 2000 U.S.C.C.A.N. 69, and that their interpretation was unpredictable, *see* S. REP. NO. 106-150, at 5, 1999 WL 965424 (1999). Congress acknowledged that "[Native American] tribes, their corporate partners, courts, and the [BIA] have struggled for decades with how to apply [Old] Section 81 in an era that emphasizes tribal self-determination, autonomy, and reservation economic development." *Id.* at 2. To address these concerns, Congress passed New Section 81 and thereby narrowed the scope of contracts that require DOI approval. *Id.* at 9.

Congress did not comment on whether New Section 81 applied to contracts formed before its enactment, however. *See generally id.* When Congress does not expressly prescribe a statute's retroactive reach, courts must consider whether such retroactive application would have an impermissible retroactive effect. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 278 (1994). A new statute has an impermissible retroactive effect if, compared to the old statute, its retroactive application would impair a party's

3

rights or increase his liabilities for past conduct, or if it would impose new duties on a party. *Id.* In the event that such an impermissible retroactive effect is present, it is presumed that the new statute does not apply retroactively. *Id.*

### B. Factual and Procedural Background

Santo Domingo Pueblo ("Pueblo") is a Native American pueblo, or tribal community, located in New Mexico. Compl. ¶ 2. Kewa Gas Limited ("Kewa") is a Registered Indian Tribal Distributor ("RITD") that operates the Pueblo's retail gas station, its gas distribution business and related businesses. *Id.* ¶ 20. In August 1996, the plaintiff, QEL, entered into a management agreement ("agreement") with the Pueblo and Kewa. *Id.* ¶ 16. The agreement authorized the plaintiff to manage Kewa's gas distribution business and to be compensated at a rate of 49% of income, plus bonuses. *Id.* The agreement was to last for ten years, but the plaintiff had the option at the end of the first decade to renew it for an additional ten years, and for a subsequent ten-year period thereafter. *Id.* In other words, the plaintiff could elect to bind the defendant to the agreement for thirty years. *Id.*

The parties operated under the agreement for six years. *Id*. ¶¶ 22, 36. In March 2003, however, the Governor of the Pueblo requested that the BIA review the agreement, believing that it was "far too lucrative for" QEL, and adversely "impacted the tribe. . . financially." *Id.* ¶ 37.

In October 2003, the BIA determined that the agreement was subject to review under Old Section 81 because the parties entered into the agreement before New Section 81 was enacted. *Id*. ¶ 38. The BIA further reasoned that because the agreement had

4

never been approved by the Secretary of the DOI, Old Section 81 dictated that the agreement had "never been legally valid and any monies received by [the plaintiff] pursuant to [the agreement] were [therefore] unauthorized." *Id.*

The plaintiff appealed the BIA's decision to the Board, which upheld the BIA's findings in March 2007. *Id.* ¶ 43. The Board determined that New Section 81 did not retroactively apply to the agreement and that, therefore, Old Section 81 applied. Compl., Ex. B ("Bd. 2007 Decision"), at 3. The Board further concluded that under Old Section 81, the agreement should have received approval from the Secretary of the DOI before going into effect. *Id.* at 2.

The plaintiff then commenced this action seeking review of the Board's decision. Compl. ¶ 44. In February 2009, the court determined that the Board's decision was arbitrary and capricious because it had failed to address two considerations central to its holding. Mem. Op. (Feb. 19, 2009 ) at 11. First, this court held that in determining whether Old Section 81 or New Section 81 applied to the agreement, the Board had not fully addressed whether applying New Section 81 would result in an impermissible retroactive effect. *Id.* Second, in determining whether the agreement required DOI approval under Old Section 81, the Board had neglected to consider whether the agreement was "relative to" Native American lands. *Id.* at 9-10. For these reasons, the case was remanded to the Board with instructions to explain the basis of its decision. *Id.* at 14.

In December 2010, the Board issued a more developed opinion that reaffirmed its previous decision. *See generally* Compl., Ex. C ("Bd. 2010 Decision"). In its 2010 opinion, the Board determined that Old Section 81 should apply to the agreement because

applying New Section 81 would have an impermissible retroactive effect. *Id.* at 317. Specifically, the Board concluded, applying New Section 81 would create contractual rights and duties for the parties that had not existed before. *Id.* The Board also held that under Old Section 81, the agreement required DOI approval because it was related to Native American lands. *Id.* The defendant has now filed a motion for summary judgment, arguing that the Board's revised opinion satisfied the APA. *See generally* Def.'s Mot. In response, the plaintiff has filed a cross-motion for summary judgment, contending that the Board erred in making its determinations. *See generally* Pl.'s Mot. The court now turns to the parties' arguments and the applicable legal standards.

## III.  ANALYSIS

### A.  Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine dispute" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as

true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006).  Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial."  *Greene*, 164 F.3d at 675.

### B.  Legal Standard for Judicial Review of Agency Actions

The APA entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review thereof."  5 U.S.C. § 702.  Under the APA, a reviewing court must set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Id.* § 706; *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C.

Cir. 2001). In making this inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotations omitted). At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986); *Tourus Records*, 259 F.3d at 736. An agency action is usually arbitrary or capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also County of L.A. v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999) (holding that "[w]here the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action").

As the Supreme Court has explained, however, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Veh. Mfrs. Ass'n*, 463 U.S. at 43. Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Nothing more than a "brief statement" is necessary, as long as the agency explains "why it chose to do what it did." *Tourus Records*, 259 F.3d at 737. If the court can "reasonably discern[]" the agency's path, it

will uphold the agency's decision. *Pub. Citizen*, 988 F.2d at 197 (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

### C. The Court Grants the Defendant's Motion for Summary Judgment and Denies the Plaintiff's Cross-Motion for Summary Judgment

As mentioned previously, the court must determine whether the Board was correct in deciding two separate questions. One issue is whether Old Section 81 or New Section 81 applies to the agreement. In addition, the court must also determine whether the agreement required DOI approval in order to be valid, pursuant to Old Section 81.

For reasons explained below, the analysis of whether Old Section 81 or New Section 81 applies is influenced by whether DOI approval of the agreement was required if Old Section 81 applies. Therefore, the court will assume in the proceeding section that Old Section 81 applies, in order to reach the issue of determining whether DOI approval was necessary.

#### 1. Assuming, *Arguendo*, That Old Section 81 Applied, the Agreement Required DOI Approval[1]

The defendant asserts that the Board correctly concluded that under Old Section 81, the agreement was "relative to" Native American lands and therefore required DOI approval in order to be valid. Def.'s Mot. at 2. The plaintiff does not address the

---

[1] Again, as will become clear in the next section, resolving whether or not the agreement required DOI approval is the critical preliminary question to determining whether Old Section 81 or New Section 81 applied to the agreement. *See infra* Part III.C.2.

defendant's arguments.[2]  *See generally* Pl.'s Mot.

Under Old Section 81, a contract made with a Native American tribe for the payment of money in exchange for services must receive DOI approval if that contract relates to Native American lands.  25 U.S.C. § 81.  Here, the Board's 2010 opinion held that Old Section 81 required DOI approval of the agreement because, *inter alia*, it was an agreement related to Native American lands.  Bd. 2010 Decision at 292.  In turn, the agreement was related to Native American lands because, according to the Board, Kewa's business was "located on Native American lands."  *Id.* at 307.  Further, the Board stated, the parties to the agreement were able to enjoy the state tax exemption for Native American gasoline distributors operating on tribal reservation lands only because Kewa's business was located on Pueblo land.  *Id.* at 307.  The Board therefore reasoned that the benefit derived from the tax exemption was "inextricably tied to the Pueblo's land, its status as reservation land, and the sovereign rights of the Pueblo over its land."  *Id.* (internal quotation marks and citations omitted).  Thus, because the agreement was related to the Pueblo's lands within the plain meaning of Old Section 81, the Board concluded that DOI approval of the agreement was necessary in order for it to be valid.  *Id.*

---

[2]   Instead, the plaintiff focuses its response on why applying Old Section 81 is inappropriate here, arguing that instead of implementing *Chevron* principles, the court must adhere to the "long-standing canon that statutes are to be construed liberally in favor of [Native Americans]." Pl.'s Mot. at 4.  The court, however, applies *Chevron* deference only when there is dispute as to an ambiguous term in a statute.  *United States v. Able Time, Inc.*, 545 F.3d 824, 836 (9th Cir. 2008) (determining that *Chevron* deference does not apply to statutes that are not ambiguous); *Doe v. Attorney Gen. of U.S.*, 659 F.3d 266, 274 (3d Cir. 2011) (holding that *Chevron* deference does not apply when there is no ambiguous term and the statute is clear).  Here, the parties do not argue over whether the phrase "relative to [Native American] lands" is ambiguous under Old Section 81, nor has the Board considered competing notions of the phrase.  *Id.*  Because there is no dispute over an ambiguous statutory term, neither *Chevron* deference nor the "long-standing canon" advanced by the plaintiff apply.

An agreement concerning a business located on tribal land that provides services to Native Americans is "relative" to Native American lands within the meaning of Old Section 81. *A.K. Mgmt. Co. v. San Manuel Band of Mission Indians*, 789 F.2d 785, 787 (9th Cir. 1986) (affirming a district court's decision that an agreement to construct a bingo facility was "relative to" Native American lands because the business was located on tribal land); *Wis. Winnebago Bus. Comm. v. Koberstein*, 762 F.2d 613, 619 (7th Cir. 1985) (same). Therefore, assuming that Old Section 81 applies to the agreement, the parties were required to obtain DOI approval before entering into it. *Pueblo of Santa Ana v. Hodel*, 663 F.Supp. 1300, 1304-05 (D.D.C. 1987) (concluding that because the business that the parties had formed under contract was related to Native American lands within the meaning of Old Section 81, DOI approval of the contract was required for it to be valid). Accordingly, the court concludes that the Board's 2010 determination that the agreement required DOI approval was not arbitrary, capricious or contrary to law. *Id.* at 1309 (determining that the BIA's decision was not arbitrary or capricious when it held that an agreement related to Native American lands pursuant to Old Section 81 required DOI approval); *Rosales v. United States*, 477 F. Supp. 2d 119, 128 (D.D.C. 2007) (holding that the Board's reasoning in upholding a tribal constitutional amendment was not "arbitrary, capricious, [or] contrary to law or an abuse of discretion" because the court could reasonably discern how the Board reached its holding).

### 2. The Board Did Not Err in Determining That New Section 81 Would Have an Impermissible Retroactive Effect

The parties disagree as to whether Old Section 81 or New Section 81 applies to the agreement. *See generally* Def.'s Mot.; Pl.'s Mot. The crux of this disagreement lies

in whether New Section 81 would have an impermissible retroactive effect and should therefore not be applied to the agreement. *Landgraf*, 511 U.S. at 269-70, 280. The plaintiff maintains that such an impermissible retroactive effect exists, Pl.'s Opp'n at 6, whereas the defendant responds that it does not, Def.'s Mot. at 19.

A statute has an impermissible retroactive effect when its retroactive application "would impair the rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280. If a statute is deemed to have an impermissible retroactive effect, the court presumes that the new statute "does not govern." *Id.*

As mentioned previously, the Board's 2010 opinion determined that if Old Section 81 applied, the agreement would be deemed invalid due to the parties' failure to obtain DOI approval. Bd. 2010 Decision at 317. Thus, the Board stated, because the agreement would not be enforceable pursuant to Old Section 81, the parties would have no contractual rights and liabilities. *Id.* On the other hand, the Board noted, applying New Section 81 would not require DOI approval of the agreement and the agreement would be enforceable. *Id.* Applying New Section 81 to the agreement would therefore give rise to contractual obligations for the parties, the Board reasoned. *Id.* Thus, the Board concluded, applying New Section 81 would create contractual rights and duties for the contracting parties, whereas no such rights and duties existed under Old Section 81. *Id.* These rights and obligations would be triggered as of March 2000, when New Section 81 was enacted. *Id.*

Essentially, the Board observed, applying New Section 81 would require Kewa and the Pueblo to become locked into what they deemed to be an undesirable business

12

arrangement with the plaintiff for a potential thirty years.[3] *Id.* at 318.  By contrast, the Board reasoned, applying Old Section 81 would invalidate the agreement and allow Kewa and the Pueblo to walk away from it without consequence.  *Id.*  According to the Board, applying New Section 81 would therefore have an impermissible retroactive effect because it would bind the Pueblo to financially detrimental legal obligations it would otherwise not have and "change the legal consequences of the parties' pre-enactment conduct."  *Id.*

The court agrees that, as discussed above, DOI approval was required under Old Section 81.  *See supra* Part III.C.1.  Because the parties never obtained such approval, they had no contractual rights or obligations under Old Section 81.  *Pueblo of Santa Ana*, 663 F.Supp. at 1315 (determining that an agreement that was related to Native American lands under Old Section 81 was unenforceable because the parties had failed to obtain DOI approval).  The court further agrees that under New Section 81, the agreement would have been enforceable because DOI approval was not required.  *See* 25 U.S.C. § 81(b) (2000) (stating that DOI approval is not required for agreements in effect for seven years or less).  As the Board correctly noted, the parties would thus be bound by the contractual rights and duties flowing from the agreement.  *See* Bd. 2010 Decision at 318.  Applying New Section 81 would therefore impose new contractual duties on the parties with respect to "transactions already completed," as compared to applying Old Section 81.  *Landgraf*, 511 U.S. at 269-70, 280.  Stated otherwise, applying New Section 81 would have an impermissible retroactive effect.  *Id.* (determining that if retroactive

---

[3] The Board determined that requiring Kewa and the Pueblo to become locked into the agreement would involve waiving sovereign immunity, paying out 49% of profits plus bonuses to the plaintiff and being prevented from hiring any other, more attractive, business managers for the entirety of that period.  *Id.*

application of a statute imposes new contractual obligations on a party, it constitutes an impermissible retroactive effect).

The court thus considers the Board's 2010 analysis to be well-reasoned and legally sound in determining that applying New Section 81 to the agreement would have an impermissible retroactive effect. *Associated Fisheries of Me., Inc. v. Daley*, 127 F.3d 104, 113 (1st Cir. 1997) (holding that an agency's decision was well-reasoned when it held that applying the new rule would result in an impermissible retroactive effect because it would impose new duties with respect to transactions already completed). Accordingly, the court concludes that the Board's 2010 decision was not arbitrary, capricious or contrary to law, and therefore did not violate the APA. *Conax Fla. Corp. v. United States*, 824 F.2d 1124, 1130 (D.C. Cir. 1987) (determining that an administrative agency's decision that a contract was valid was not arbitrary, capricious or contrary to law because it was well-reasoned).

### IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment and denies the plaintiff's cross-motion for summary judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 26th day of March 2012.